FILED IN MY OFFICE
DISTRICT COURT CLERK
1/13/2017 12:57:55 PM
James A. Noel
Latoya Grayes

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

VANESSA BARTOO,

      Plaintiff,

Risk # 1501022-000

v.

      No. D-202-CV-2017-00304

VINCENT MARES, Executive Director,
New Mexico Racing Commission;
DAVID KEITER, Steward,
New Mexico Racing Commission;

      Defendants.

## COMPLAINT FOR DAMAGES FOR CONSTITUTIONAL VIOLATIONS

1.      This action brought under 42 U.S.C § 1983 for violation, infringement and

deprivation of rights afforded by the Due Process Clause, and the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution.

### PARTIES

2.      Plaintiff is a resident of Sierra County, New Mexico.

3.      Defendant Vincent Mares was, at all times relevant to this Complaint, the

Executive Director of the New Mexico Racing Commission.

4.      Defendant David Keiter is a Steward with the New Mexico Racing Commission.

### JURISDICTION AND VENUE

5.      The State Court has concurrent jurisdiction to hear claims arising under federal

law under 42 U.S.C. § 1983. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502 (1962).

6.      All significant events which form the basis for this action occurred in Bernalillo

County, New Mexico.

7.      Venue is proper in the Second Judicial District.

# Exhibit 2

## BACKGROUND APPLICABLE TO ALL CAUSES OF ACTION

8.     A Race meet was scheduled for the weekend of May 22–24, 2014 at the Riudoso Downs Race Track.

9.     Plaintiff was and is licensed by the New Mexico Racing Commission to engage in horse racing in New Mexico. Ex. 1, ¶ 1.

10.     Plaintiff's two horses, Ellas Cartel and Anna Delovely were entered to race on May 24, 2014. *Id.* at ¶ 2.

11.     Plaintiff had paid an additional $20,000 nomination fee to race on May 24, 2014.

12.     The purse for the race in which Plaintiff's horses were scratched was nearly $1 million.

13.     Moments before the commencement of the race in which Ellas Cartel and Anna Delovely were entered, they were scratched from the race. *Id.*

14.     The individual directly responsible for scratching Ellas Cartel and Anna Delovely was Defendant David Keiter, presiding Steward. *Id.* at ¶ 4.

15.     Upon information and belief, David Keiter acted under the authority and direction of Vincent Mares, Executive Director of the NMRC.

16.     The horses were scratched for an alleged failure to comply with Rule 15.2.5.12(B) (the "Breed Certificate Rule"). *Id.* at ¶ 3.

17.     Rule 15, 2.5.12(B) states "[a] horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

18.     The Breed Certificate Rule does not, by its language, make reference to or require the original Breed Certificate to be on file at the location of where a horse is racing at the time of a race. *Id.* at ¶ 7.

19.     On the weekend of May 22-24, 2014, Plaintiff had copies of the Breed
Certificates for Ellas Cartel and Anna Delovely on file with the racing secretary at the
Riudoso Downs race track.

20.     On the weekend of May 22-24, 2014, Plaintiff had originals of the Breed
Certificates on file in Farmington, New Mexico.

21.     On or about May 24, 2014, David Keiter, acting in consort with Vincent Mares,
interpreted the Breed Certificate Rule to require the "original" Breed Certificate to be on
file at a race location on race day. *Id.* at ¶ 7.

22.     The "original" certificate aspect of the Breed Certificate Rule had not been
enforced in recent history when two live races were ongoing. *Id.* at ¶ 9, 15, 16.

23.     Two live races were ongoing during the May 22-24, 2014 weekend.

24.     Horses were not scratched from the Riudoso Downs races during the May 22-24,
2014, weekend until the third days of races, May 24, 2014. *Id.* at ¶ 10.

25.     Mares and Keiter acted under color of state law in reinterpreting the Breed
Certificate rule and applying their new requirements thereunder.

26.     Leasa Johnson is an investigator with the NMRC.  In 2014, she had been
employed in such capacity for approximately 12 years. *Id.* at ¶ 8.

27.     Leasa Johnson, an investigator with the NMRC, was present at the Riudoso
Downs races on May 24, 2014. *Id.* at ¶ 8.

28.     When Johnson became aware of horse scratches on May 24, 2014, she made
inquiries of Defendant Keiter.   Defendant Keiter advised Johnson that he was enforcing
the Breed Certificate Rule. *Id.* at ¶ 10-11.

29.     The NMRC's own investigator, Leasa Johnson, expressed concern over the

enforcement of the "original" certificate requirement implied by the Breed Certificate

Rule because it had not been enforced in recent history. *Id.* at ¶ 11, 15.

30.     Johnson also expressed concern that the implied requirement of an original

certificate was not being enforced equally. *Id.* at ¶ 11.

31.     Based on the horses scratched, it appears that the NMRC was targeting horses

trained by trainer John Stinebaugh. Ex. 2

32.     It was not until the third day of the Ruidoso Downs race meet that the implied

"original certificate" requirement of the Breed Certificate Rule was enforced. Ex1, ¶ 13.

33.     It appears that such requirement was enforced to give a competitive edge to other

registered horses, owners and trainers.

34.     No announcements had been made nor notices issued to give owners and trainers

notice of the new enforcement of the implied requirements of the Breed Certificate Rule.

*Id.* at ¶ 14.

35.     Licensees had no opportunity to comply with the newly enforced and implied

requirements of the Breed Certificate Rule on May 24, 2014.

36.     At least one horse, if not more, that was not in compliance with the implied

requirements of the Breed Certificate Rule was allowed to race by the NMRC during the

May 22-24, 2014, race meet. *Id.* at ¶ 16.

37.     Lonnie Barber, Director of the SunRay Park Race Track for eleven years and

former president of the Horseman's Association for fifteen years testified during the

NMRC hearing that the NMRC had not enforced the original certificate requirement of

the Breed Certificate Rule in the past.

38.     Substantial evidence exists that establishes that the implied requirement of having

an original Breed Certificate on file with the racing secretary at the race track at which a

horse was racing was not enforced before the scratches on May 24, 2014. *Id.* at ¶ 18.

39.     Despite there being no requirement in applicable regulations for "original"

certificates being at a race location, Defendant Keiter acting in consort with or at the

direction of Vincent Mares began to enforce such "implied" rule regarding the Breed

Certificates on May 24, 2014, at the Riudoso Downs Race Track without notice to

impacted owners and trainers.

40.     Upon information and belief, employees of NMRC informally advised certain

select owners/trainers that it would begin enforcing the "implied" Breed Certificate Rule

during the May 22-24, 2015 racing event.

41.     Keiter and Mares of the NMRC in choosing to enforce a never before enforced

"implied" rule and to do so without notice, sought to negatively impact certain

owners/trainers.

42.     On or about June 2, 2014, Plaintiff went to the NMRC offices to file an

appeal/complaint regarding the improper scratches.

43.     The NMRC appointed a hearing officer, Leann Werbelow, to hear the improper

scratch cases.

44.     On November 20, 2015, the NMRC's duly appointed hearing officer held a

hearing related to the improper scratches of numerous race horses from the May 22-24,

2014, races at Riudoso Downs. *Id.*

45.     The hearing officer found that the NMRC's action "shows a lack of impartiality

and is inconsistent with the statutory directive of the Horse Racing Act that rules of the

Commission be 'construed to ensure that horse racing in New Mexico is conducted with

fairness.'" *Id.* at p. 8.

46.     Despite the ruling and recommendations of the NMRC designated hearing officer, the NMRC did not implement the decision are take any other action to correct the actions of Keiter and Mares or to compensate Plaintiff for harm as a result of their actions.

47.     On March 12, 2015, months after the decision of the NMRC-assigned Hearing Officer issued her decision, the NMRC simply voted to "take this matter under advisement." Ex. 3, Decision and Order of the NMRC, dated March 18, 2015.

48.     On July 22, 2015, the NMRC held a commission meeting during which Plaintiff's matter, arising from the actions of Mares and Keiter, was to be discussed.

49.     NMAC 15.2.1.9(C)(15)(d) provides that "[a]fter the expiration of time for filing exceptions and replies, the commission shall *consider the proposal for decision in open meeting.*

50.     Despite the express requirements of the NMAC to consider hearing decisions in an open meeting, the NMRC on July 22, 2015, went into a closed session to "consider" Plaintiff's successful hearing decision.

51.     NMRC acted to "remand" Plaintiff's matter for further examination, avoiding a decision on Mares and Keiter's unconstitutional actions.  No explanation was provided as to how such process was to proceed or the reasons/purposes for the remand.

52.     The NMRC for more than 16 months, failed to reach a decision on the actions of its employees in violating Plaintiff's constitutional rights, and failed to compensate Plaintiff for the deprivations.

53.     Defendants committed such acts in the manner and means described above, have engaged in a pattern and practice of violating Plaintiff's rights as well as the rights of

others intended to be protected by the NMRC.

54.     Plaintiff then withdrew her administrative appeal without final action having been

taken by NMRC to address the actions of Keiter and Mares and compensate Plaintiff for

her damages stemming from Keiter and Mares' actions.

## FIRST CAUSE OF ACTION:
## VIOLATION OF DUE PROCESS BY DAVID KEITER AND VINCENT MARES

55.     Plaintiff re-alleges each and every above-enumerated paragraph as if fully set

forth herein.

56.     Procedural due process rules are meant to protect persons from the mistaken or

unjustified deprivation of life, liberty, or property.

57.     An elementary and fundamental requirement of due process in any proceeding

which is to be accorded finality, is reasonably calculated notice to apprise interested

parties of the pendency of an action and afford them an opportunity to present their

objections or comply with direction of state actors.

58.     To afford due process, such notice must be sufficient to enable a citizen to

determine what is being proposed and what she must do to prevent the deprivation of her

interest.

59.     Any legal proceeding enforced by a public authority, whether sanctioned by age

or custom or newly devised in the discretion of *the legislative power*, must be held to the

due process of law.  *See Hurtado v. California*, 110 U.S. 516, 537 (1884).

60.     The employees of NMRC are limited in their actions and activities by regulations

approved and passed by the legislature of the State of New Mexico.

61.     The "Breed Certificate Rule" is found at NMRA 15.2.5.12(B).

62.     The "Breed Certificate Rule," by its own language, does not include a requirement that an "original" Breed Certificate be on file with the racing secretary at a given location at the time of a horse race.

63.     The "Breed Certificate Rule," does not imply that an "original" Breed Certificate be on file with the racing secretary at a given location at the time of a horse race.

64.     David Keiter and Vincent Mares, employees of the NMRC, acted to reinterpret the Breed Certificate rule, determining that it "implied" that an original certificate was required to be at each track.

65.     The implied "original" Breed Certificate requirement of the Breed Certificate Rule had never been applied by employees of the NMRC prior to May 24, 2015.

66.     David Keiter and Vincent Mares acted in concert to interpret and apply the implied "original" Breed Certificate requirement of the Breed Certificate Rule on May 24, 2015.

67.     David Keiter and Vincent Mares failed to provide notice of their change in rule, regulation and/or policy.

68.     David Keiter and Vincent Mares sought to change applicable regulations governing the operation of the Horse Racing Act without first seeking legislative approval for such change.

69.     David Keiter and Vincent Mares acted in an arbitrary manner to enforce a new policy without authorization and notice to racing participants and the public.

70.     David Keiter and Vincent Mares sought to deprive certain select individuals of their liberty and property interests when implementing the implied "original" Breed Certificate requirement of the Breed Certificate Rule.

71.     Mares and Keiter sought to harm and violate the rights of certain select individuals such as Plaintiff, by their implementation of new requirements of the Breed Certificate Rule, without regulatory notice and due process of the law.

72.     Plaintiff's two horses were denied the opportunity to race on May 24, 2014, by the actions of Defendants Mares and Keiter.

73.     Both horses were denied the opportunity to win the races they were registered to race in on May 24, 2014.

74.     Plaintiff filed an administrative appeal, challenging the scratches as violating her constitutional rights.

75.     A hearing on the improper scratches was held November 20, 2014.  The hearing officer found that the action of the NMRC employees David Keiter and Vincent Mares to begin enforcement of new requirements and their interpretation of the Breed Certificate Rule violated the rights of registered horse owners such as Plaintiff.

76.     [S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest." This right is a "basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of her possessions."

77.     The purpose of the due process requirements is to protect a person's use and possession of property from arbitrary encroachment. *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).

78.     The notice of hearing and the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

79.     The actions of Keiter and Mares of the NMRC were an arbitrary exercise of government power.

80.     Plaintiff's Constitutional rights to Due Process were violated by Keiter's and Mares' improper modification of a regulation without legislative approval, to whit, the Breed Certificate Rule.

81.     Plaintiff's Constitutional rights to Due Process were violated by implementation of a new rule without notice.

82.     Plaintiff's Constitutional right to Due Process was violated by Defendants failure to provide a hearing at a meaningful time and in a meaningful manner, before scratching Plaintiff's horses.

83.     Plaintiff's Constitutional rights to Due Process were violated by the NMRC's refusal to implement the decision of its own hearing officer finding that the NMRC had violated Plaintiff's procedural rights.

84.     The NMRC has continued to fail to correct the procedural violations causing harm to Plaintiff.

85.     The NMRC has engaged in a pattern and practice of violating the procedural protections afforded to those who are intended to be protected by the Horse Racing Act and its implementing regulations.

86.     Employees of the NMRC, at the direction of Vincent Mares, have purposefully acted to violate the constitutional rights of those intended to be protected by the Horse Racing Act and its implementing regulations and target certain individuals such as Plaintiff.

87.     Plaintiff has been harmed as a result of the improper, arbitrary and abusive

constitutional violations of Vincent Mares, David Keiter of the NMRC.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE 14TH AMENDMENT TO THE
### UNITED STATES CONSTITUTION VIA 42 U.S.C. 1983

88.    Plaintiff realleges each and every above-enumerated paragraph as if fully set forth
herein.

89.    42 U.S.C. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District, subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit
> in equity or other proper proceeding for redress.

90.    Defendant Mares and Defendant Keiter acted to deprive Plaintiff of her
constitutional rights to due process when they acted to impose a new and/or newly
interpreted regulation without notice or opportunity to be heard, resulting in the scratch of
her horses, Ellas Cartel and Anna Delovely, and their inability to race.

91.    Defendant Mares and Defendant Keiter acted to violate the Horse Racing Act and
implementing regulations when it re-interpreted such regulations to "imply" that the
*original* Breed Certificate was required to be on file at a location at which a horse was
racing.

92.    Defendant Mares and Defendant Keiter acted to violate the Horse Racing Act and
implementing regulations when it re-interpreted such regulations to "imply" that the
*original* Breed Certificate was required to be on file at a location at which a horse was
racing.

93.    Defendant Mares and Defendant Keiter acted to violate the law and Plaintiff's rights when it acted to modify by practice, Horse Racing Act regulations without legislative approval.

94.    Defendant Mares and Defendant Keiter's actions deprived Plaintiff of her constitutional right to engage in her profession and calling without due process.

95.    The right of a citizen in New Mexico under its Constitution to follow any legitimate business, occupation, or calling which he may see fit to engage in, and to use such right as a means of livelihood, is fully secured.  State v. Spears, 1953-NMSC-033, 57 N.M. 400, 409, 259 P.2d 356, 362

96.    Defendant Mares and Defendant Keiter deprived Plaintiff of a protected property interest when it violated the Horse Racing Act, reinterpreted its regulations and applied such new interpretations without due process.

97.    The actions of the Defendants were undertaken in malicious disregard of the Constitutional rights of Plaintiff and protections afforded to her under the law, for the purpose of injuring her.   The actions and underlying intent of Defendants justify the imposition of punitive damages in order to punish them for their actions and deter such future action by NMRC employees.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for:

1.    The Court to find that Defendants have violated Plaintiff's constitutional right to due process;

2.    The Court to find that the actions of identified Defendants described in this Complaint establishes a pattern and practice that employees of the NMRC violate its own

governing laws, regulations, policies and practices

3.     The Court to find that Defendants violated Plaintiffs' right to equal protection under the law;

4.     An order for responsible Defendants to pay Plaintiff's attorney fees and costs for their deprivations of Plaintiff's constitutional rights;

5.     General compensatory damages according to proof;

6.     Punitive damages in such amount as will sufficiently punish Defendants for their willful, malicious and continued pattern and practice of violating the law and their own implementing regulations and policies, as well as the rights of those such laws are intended to protect.

7.     Interest on such damages awarded at the legal rate from the date of judgment until paid; and

8.     Any and all other relief that may be appropriate as deemed by this Court.

Respectfully submitted this 13th day of January, 2017.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP


/s/ A. Blair Dunn, Esq.
A.  Blair Dunn, Esq.
1005 Marquette Ave NW
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com

BEFORE THE NEW MEXICO STATE RACING COMMISSION
OF THE STATE OF NEW MEXICO

IN THE MATTER OF
VANESSA BARTOO,
ROBERT J. GERHARDT,
A. JAMES STREELMAN,
AND MARK MILNER

# HEARING OFFICER'S REPORT

COMES NOW the New Mexico State Racing Commission's duly appointed Hearing

Officer, LeeAnn Werbelow, who convened a hearing in this matter on November 20, 2014 in

Albuquerque, New Mexico and hereby timely submits this Hearing Officer's Report.

## PROCEDURAL SUMMARIZATION

Respondents Bartoo, Gerhardt, Streelman and Milner were represented by Allen Kincaid,

Esq.   Counsel for Respondents affirmed and stipulated that proper notice had been given to each

Respondent.   The Commission was not represented by counsel at the hearing in this matter.

EXHIBITS

Respondents introduced to the following exhibits:

Exhibit A consists of 7 pages and is the Ruidoso Downs race schedule for First

Day (May 22, 2014); Second Day (May 23, 2014) and Third Day (May 24, 2014).

Exhibit B consists of a single page and is the race results from Equibase for the

race finals on June 7, 2014.



## FINDINGS OF FACT

Based upon the testimony and evidence presented at the hearing, the Hearing Officer hereby submits the following findings of fact:

1.    Respondents were each licensed by the Commission in New Mexico on May 24, 2014 and therefore subject to all rules and regulations promulgated by the Commission.

2.    On May 24, 2014 Anna DeLovely, Ellas Cartel, Three Wild Dreams, Dynasty Edition and Streakin Mr. Jess were scratched from participation on the third race day at the Ruidoso Downs race meet.

3.    The horses were scratched for failure to comply with Rule 15.2.5.12(B) (the "Breed Certificate Rule").   Specifically, the Commission rules provide that the breed registration certificates (the "Breed Certificate") must be on file with the racing secretary where the horse is racing at the time of the race.   Rule 15.2.5.12(B) NMAC.

4.    David Keiter is the Presiding Steward for the Racing Commission.  Mr. Keiter made the decision to scratch the horses at issue in this hearing based on failure to comply with the Breed Certification Rule.

5.    Mr. Keiter testified that to his knowledge the Breed Certification Rule had always been followed.  Mr. Keiter also testified that in or around April, 2014 upon receiving an inquiry from a horseman, he researched the Commission rules for any requirements that necessitated the original Breed Certificate to be on file at the track where the horse was racing.   It was at that time it was determined any horse can enter a race with or without the Breed Certificates being on file. However, on the actual race day, the Breed Certificates had to be at the office of the racing secretary at the track where the horse was racing.

6.      Mr. Keiter testified that in a conversation with the racing secretary at SunRay Park, he emphasized the importance of the Breed Certificate Rule.   Mr. Keiter stated "irrespective of what has been done yesterday right or wrong this is the current rule in place."

7.      Testimony by Mr. Keiter indicated that while the Breed Certificate Rule does not make reference to "original" Breed Certificates, it is implied that a reference to Breed Certificates by definition refers to the original paperwork.

8.      Leasa Johnson is an investigator for the New Mexico Racing Commission.   She has been an investigator for the Commission for approximately twelve years.   Investigator Johnson was present at the Ruidoso Downs race meet on May 24, 2014.

9.      Investigator Johnson testified that the Breed Certificate Rule requiring Breed Certificates be in the racing office at the tract the horse was running at when there were two live races going on had not been followed or enforced for several years.

10.     On May 24, 2014, the third race day at the Ruidoso Downs race meet, when horses began to get scratched, Investigator Johnson inquired about the reason the scratches had occurred.

11.     Investigator Johnson was informed that the Breed Certificate Rule was being enforced.   It appeared through the testimony of Investigator Johnson, that she was concerned that a rule that had not been enforced for several years was going to begin to be enforced without notice to the horseman.   Investigator Johnson was also concerned that all horsemen entered in the Ruidoso Downs race meet needed to be treated the same.   She informed the appropriate Commission officials that if some horses were going to be scratched for an infraction of the Breed Certificate Rule, then all horses who had competed or were scheduled to compete would need to be disqualified or scratched as applicable.

12.     It was discovered that although there had been an affirmative stance to enforce the Breed Certificate Rule in April, 2014, at least one horse had been permitted to run in the first day of the Ruidoso Downs race meet in May, 2014.   As a result, the horse(s) whose Breed Certificates were not at the race tract as required under the Breed Certificate Rule were retroactively disqualified.

13.     It was not until the third day of the Ruidoso Downs race meet that the Breed Certificate Rule was enforced and horses began to be preemptively scratched for an infraction of the Breed Certificate Rule.

14.     Investigator Johnson testified that, to her knowledge, no announcements had been made or notice placed on the overnights to alert licensees that the Breed Certificate Rule was going to begin to be enforced at the Ruidoso Downs race meet.

15.     Investigator Johnson is a Commission Investigator who has worked for twelve years to enforce the Commission rules.   However, her testimony showed a concern for fairness that after at least a decade of non-enforcement, the Breed Certificate Rule would begin to be enforced without notice to licensees.

16.     The pivotal testimony in the matter was the testimony of Investigator Johnson that (1) the Breed Certificate Rule had not been enforced during her time as an investigator with the Commission; (2) at least one horse that was not in compliance with the Breed Certificate Rule had been permitted to compete at the Ruidoso Park race meet, and was subsequently disqualified only after the scratches at issue in this matter occurred on the third race day; and (3) the enforcement of the Breed Certificate Rule without notice to the horseman raised fairness concerns.

17.     Supporting Investigator Johnson's testimony was the testimony of Lonnie S.

Barber, director of the SunRay Park for the last eleven years and past president of the Horseman's Association for fifteen years.   Mr. Barber testified that prior to April 2014, the Breed Certification Rule had not been enforced.   Mr. Barber testified that he was informed in approximately mid-April 2014 that the Breed Certification Rule would be enforced.   Based on this information, Mr. Barber felt it was necessary to give notice to horsemen that were participating at the SunRay Park meet that the Breed Certificate Rule would be enforced.

18.     Investigator Johnson's testimony taken in conjunction with the testimony of Mr. Barber and of other trainers and owners is convincing that the Breed Certificate Rule had not been enforced prior to 2014.   In fact, there was substantial testimony that the Breed Certificate Rule had not been enforced for at least a decade.

19.     Based on the testimony of Mr. Barber and Mr. Keiter, a decision had been made to begin enforcing the Breed Certificate Rule in mid-April 2014.   Thus, in May 2014, on the first and second day of the Ruidoso Downs meet, the decision had previously been made to enforce the Breed Certificate Rule, however, such enforcement did not actually occur until the third day of the Ruidoso Downs race meet.   Further, despite the fact that the Breed Certificate Rule had not been enforced for at least a decade, and that Mr. Barber felt it was necessary to and did give notice that the Breed Certificate Rule would begin to be enforced at the SunRay Park race meet, no notice was given to participants at the Ruidoso Downs race meet.

## CONCLUSIONS OF LAW

Based on the findings of fact, the Hearing Officer hereby reaches the following conclusions of law:

A.      This matter came properly before the Hearing Officer.

B.      The hearing was heard de novo.

C.      The subject matter of this action is within the jurisdiction of the Commission.

D.      The Commission had personal jurisdiction over Respondent for the purposes of this action and its adjudication.

E.      All parties to this proceeding were properly and timely noticed.

F.      No objections were made to the appointment of the Hearing Officer or hearing procedures.

G.      The Horse Racing Act requires that the rules of the Commission be construed "to ensure that horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practices on the racing grounds.  NMSA 1978, Section 60-1A-5A (2007).

H.      The Commission rules are intended "to protect the integrity of horse racing, to ensure the health and welfare of race horses and to safeguard the interests of the public and the participants in racing." Rule 15.2.6.6 NMAC.

I.      The steward, agency director, or commission may order an individual ejected or excluded from all or part of any premises under the regulatory jurisdiction of the commission if the stewards, agency director, or commission determine that the individual's presence on

association grounds is inconsistent with maintaining the honesty and integrity of racing. Rule 15.2.1.9 (C)(21)(a) NMAC. An exclusion may be ordered in conjunction with other disciplinary action taken by the stewards or commission.   Rule 15.2.1.9 (C)(21)(b) NMAC.   If an individual is excluded, a race animal owned or trained by or under the care or supervision of the individual is ineligible to be entered or to start in a race in this jurisdiction   Rule 15.2.1.9 (C)(21)(c) NMAC.

J.      A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary or horse identifier; unless it has been verified that the certificate has been submitted to the appropriate breed registry for correction   Rule 15.2.5.12(B) NMAC.

K.      The original breed registration certificate for the scratched horses at issue in this hearing were not on file at the Ruidoso Downs track secretary on May 24, 2014 at the time the horses that are the subject of this matter were scheduled to race.

L.      However, there were mitigating circumstances.   The scratch rulings made by the presiding steward which scratched the horses that are the subject of this matter was on the third race day of the Ruidoso Downs race meet.   Despite the fact that a decision had been made to enforce the Breed Certificate Rule in April, 2014, the Breed Certificate Rule was not enforced on the first and second days of the Ruidoso Downs race meet.   In fact, at least one horse which was not in compliance with the Breed Certificate Rule was permitted to run on the first race day of the Ruidoso Downs race meet and was retroactively disqualified only after Investigator Johnson made inquiries to ensure fairness and consistency in the enforcement of the rules.   To begin to enforce a rule that had not previously been enforced for a period of at least a decade without notice presents a question of fairness, especially given participates at a different race meet, the

SunRay Park meet, were given advance notice the rule would begin to be enforced.   However, for the Commission to establish that the Breed Certificate Rule would begin to be enforced in April, 2014, but fail to enforce such rule on the first and second days of the Ruidoso Downs in May 2014, and then resume the enforcement and begin scratching horses not in compliance with the Breed Certificate Rule three days into the Ruidoso Downs race meet shows a lack of impartiality and is inconsistent with the statutory directive in the Horse Racing Act that the rules of the Commission be construed "to ensure that horse racing in New Mexico is conducted with fairness."   Section 60-1A-5A.

## RECOMMENDATIONS

It is the opinion of this hearing officer that based on the testimony, notably the Commission's own investigator, and specific facts presented at the hearing, the ruling that resulted in scratching the horses at issue in this matter on May 24, 2014, the third race day, at the Ruidoso Downs race meet lacked impartiality and was inconsistent with the statutory direction of the Horse Racing Act to ensure that horse racing in New Mexico is conducted with fairness.

Respectfully Submitted,

LEEANN WERBELOW, ESQ.
Hearing Officer

December 16, 2014

Resubmitted February 19, 2015

**RULING#: 0317414**          **TRACK: RUIDOSO DOWNS**          **DATE: May 25, 2014**

Trainer JOHN ALLEN STINEBAUGH (DOB: 05/03/1957 NMSRC LICENSE #56082391) having telephonically appeared before the Board of Stewards on this date, for failure to have the registration certification on file for "Anna Delovely", entered in the eleventh race, Saturday, May 25, 2014, at Ruidoso Downs, which resulted in a late program scratch.

JOHN ALLEN STINEBAUGH is found to be in violation of:

<u>15.2.5.12(B) NMAC:</u> Which states in pertinent part "A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

<u>16.47.1.10(C)(7) NMAC:</u> Which states in pertinent part that "A Trainer is responsible for registering with the racing secretary each horse in his/her charge within 24 hours of the horse's arrival on association grounds."

For this rule violation, the Board of Stewards assessed JOHN ALLEN STINEBAUGH a penalty in the amount of one hundred dollars ($100.00). The fine is to be paid on or before June 25, 2014, in accordance with 15.2.3.8(B)(3)(l) NMAC.

Failure to pay the fine within the time prescribed may result in immediate suspension.

**BY ORDER OF THE RUIDOSO DOWNS BOARD OF STEWARDS**

DAVID KEITER          CONNIE ESTES          ED L'ECUYER

Appeal Filing Deadline: 15.2.1.9(B)(9)(b)NMAC: Which states in pertinent part that "An appeal under this section must be filed not later than 10 days from the date of the ruling. The appeal must be filed at the main Commission offices or with the Stewards who issued the ruling.

**EXHIBIT**

**2**

RULING#: 0316414          TRACK: RUIDOSO DOWNS          DATE: May 25, 2014

Trainer JOHN ALLEN STINEBAUGH (DOB: 05/03/1957 NMSRC LICENSE #56082391) having telephonically appeared before the Board of Stewards on this date for failure to have the registration certification on file for "Dynasty Edition" entered in the tenth race, Saturday, May 24, 2014, at Ruidoso Downs, which resulted in a late program scratch.

JOHN ALLEN STINEBAUGH is found to be in violation of:

<u>15.2.5.12(B) NMAC</u>: Which states in pertinent part "A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

<u>16.47.1.10(C)(7) NMAC</u>: Which states in pertinent part that "A Trainer is responsible for registering with the racing secretary each horse in his/her charge within 24 hours of the horse's arrival on association grounds."

For this rule violation, the Board of Stewards assessed JOHN ALLEN STINEBAUGH a penalty in the amount of one hundred dollars ($100.00). The fine is to be paid on or before June 24, 2014, in accordance with 15.2.3.8(B)(3)(l) NMAC.

Failure to pay the fine within the time prescribed may result in immediate suspension.

BY ORDER OF THE RUIDOSO DOWNS BOARD OF STEWARDS

DAVID KEITER                    ED L'ECUYER                    CONNIE ESTES

Appeal Filing Deadline: 15.2.1.9(B)(9)(b)NMAC: Which states in pertinent part that "An appeal under this section must be filed not later than 10 days from the date of the ruling. The appeal must be filed at the main Commission offices or with the Stewards who issued the ruling.

RULING#: 0312414          TRACK:  RUIDOSO DOWNS          DATE: May 25, 2014

Trainer JOHN ALLEN STINEBAUGH (DOB: 05/03/1957 NMSRC LICENSE #56082391) having telephonically appeared before the Board of Stewards on this date for failure to have the registration certification on file for "Fabulous Little Joe" entered in the sixth race, Saturday, May 24, 2014, at Ruidoso Downs, which resulted in a late program scratch.

JOHN ALLEN STINEBAUGH is found to be in violation of:

15.2.5.12(B) NMAC: Which states in pertinent part "A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

16.47.1.10(C)(7) NMAC: Which states in pertinent part that "A Trainer is responsible for registering with the racing secretary each horse in his/her charge within 24 hours of the horse's arrival on association grounds."

For this rule violation, the Board of Stewards assessed JOHN ALLEN STINEBAUGH a penalty in the amount of one hundred dollars ($100.00). The fine is to be paid on or before June 25, 2014, in accordance with 15.2.3.8(B)(3)(l) NMAC.

Failure to pay the fine within the time prescribed may result in immediate suspension.

BY ORDER OF THE RUIDOSO DOWNS BOARD OF STEWARDS

DAVID KEITER          ED L'ECUYER          CONNIE ESTES

Appeal Filing Deadline: 15.2.1.9(B)(9)(b)NMAC: Which states in pertinent part that "An appeal under this section must be filed not later than 10 days from the date of the ruling. The appeal must be filed at the main Commission offices or with the Stewards who issued the ruling.

RULING#: 0314414          TRACK: RUIDOSO DOWNS          DATE: May 25, 2014

Trainer JOHN ALLEN STINEBAUGH (DOB: 05/03/1957 NMSRC LICENSE #56082391) having telephonically appeared before the Board of Stewards on this date for failure to have the registration certification on file for "Ellas Cartel" entered in the seventh race, Saturday, May 24, 2014, at Ruidoso Downs,, which resulted in a late program scratch.

JOHN ALLEN STINEBAUGH is found to be in violation of:

15.2.5.12(B) NMAC: Which states in pertinent part "A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

16.47.1.10(C)(7) NMAC: Which states in pertinent part that "A Trainer is responsible for registering with the racing secretary each horse in his/her charge within 24 hours of the horse's arrival on association grounds."

For this rule violation, the Board of Stewards assessed JOHN ALLEN STINEBAUGH a penalty in the amount of one hundred dollars ($100.00).  The fine is to be paid on or before June 25, 2014, in accordance with 15.2.3.8(B)(3)(l) NMAC.

Failure to pay the fine within the time prescribed may result in immediate suspension.

BY ORDER OF THE RUIDOSO DOWNS BOARD OF STEWARDS

DAVID KEITER                ED L'ECUYER                CONNIE ESTES

Appeal Filing Deadline: 15.2.1.9(B)(9)(b)NMAC: Which states in pertinent part that "An appeal under this section must be filed not later than 10 days from the date of the ruling.  The appeal must be filed at the main Commission offices or with the Stewards who issued the ruling.

RULING#: 0316414          TRACK: RUIDOSO DOWNS          DATE: May 25, 2014

Trainer JOHN ALLEN STINEBAUGH (DOB: 05/03/1957 NMSRC LICENSE #56082391) having telephonically appeared before the Board of Stewards on this date for failure to have the registration certification on file for "Dynasty Edition" entered in the tenth race, Saturday, May 24, 2014, at Ruidoso Downs, which resulted in a late program scratch.

JOHN ALLEN STINEBAUGH is found to be in violation of:

15.2.5.12(B) NMAC: Which states in pertinent part "A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

16.47.1.10(C)(7) NMAC: Which states in pertinent part that "A Trainer is responsible for registering with the racing secretary each horse in his/her charge within 24 hours of the horse's arrival on association grounds."

For this rule violation, the Board of Stewards assessed JOHN ALLEN STINEBAUGH a penalty in the amount of one hundred dollars ($100.00). The fine is to be paid on or before June 24, 2014, in accordance with 15.2.3.8(B)(3)(l) NMAC.

Failure to pay the fine within the time prescribed may result in immediate suspension.

BY ORDER OF THE RUIDOSO DOWNS BOARD OF STEWARDS

DAVID KEITER          ED L'ECUYER          CONNIE ESTES

Appeal Filing Deadline: 15.2.1.9(B)(9)(b)NMAC: Which states in pertinent part that "An appeal under this section must be filed not later than 10 days from the date of the ruling. The appeal must be filed at the main Commission offices or with the Stewards who issued the ruling.

RULING#: 0315414          TRACK: RUIDOSO DOWNS          DATE: May 25, 2014

Trainer EMILIO CADENA, III (DOB: 11/25/1983 NMSRC LICENSE #66084195) having telephonically appeared before the Board of Stewards on this date, for failure to have the registration certification on file for "Three Wild Dreams" entered in the ninth race, Saturday, May 24, 2014, at Ruidoso Downs, which resulted in a late program scratch.

EMILIO CADENA, III is found to be in violation of:

<u>15.2.5.12(B) NMAC:</u> Which states in pertinent part "A horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary."

<u>16.47.1.10(C)(7) NMAC:</u> Which states in pertinent part that "A Trainer is responsible for registering with the racing secretary each horse in his/her charge within 24 hours of the horse's arrival on association grounds."

For this rule violation, the Board of Stewards assessed EMILIO CADENA, III a penalty in the amount of one hundred dollars ($100.00). The fine is to be paid on or before June 24, 2014, in accordance with 15.2.3.8(B)(3)(l) NMAC.

Failure to pay the fine within the time prescribed may result in immediate suspension.

BY ORDER OF THE RUIDOSO DOWNS BOARD OF STEWARDS

DAVID KEITER                    CONNIE ESTES                    ED L'ECUYER

Appeal Filing Deadline: 15.2.1.9(B)(9)(b)NMAC: Which states in pertinent part that "An appeal under this section must be filed not later than 10 days from the date of the ruling. The appeal must be filed at the main Commission offices or with the Stewards who issued the ruling.

BEFORE THE NEW MEXICO RACING COMMISSION
STATE OF NEW MEXICO

IN THE MATTER OF

VANESSA BARTOO,
ROBERT J. GERHARDT,
A. JAMES STREELMAN,
AND MARK MILNER,
          Respondents.

## DECISION AND ORDER

THIS MATTER came before a quorum of the New Mexico Racing Commission ("Commission") on the 12th day of March, 2015 upon review of the hearing officer's report for the above named Respondents whom were not present, and the Commission having considered same and being otherwise advised HEREBY FINDS AND ORDERS:

That the Commission voted unanimously to take this matter under advisement.

SO ORDERED.

Date: 3-18-15

_____
Chairman Doughty

EXHIBIT
3

# *Matter Intake Form*

**Client Code:** 007230        **Client Name:** STATE OF NEW MEXICO

| Initial Matter Information | | Complete? Yes |
|---|---|---|

**Assigned to: Valdez, Carol**

| Matter Name | Vanessa Bartoo |
|---|---|

| Matter Short Name | Vanessa Bartoo |
|---|---|

| Conflict Names Search/Add | Name:    Vanessa Bartoo |
|---|---|

Relationship:    ADVERSARY

Name:    Vincent Mares

Relationship:    MATTER

Name:    David Keiter

Relationship:    MATTER

Name:    New Mexico Racing Commission

Relationship:    CLIENT

| Additional Desc | |
|---|---|

| Conflict by SF | Carol Valdez |
|---|---|

| Conflict by ALB | N/A |
|---|---|

| Billing Address | State of New Mexico |
|---|---|

Risk Management Division

1100 St. Francis Drive, Room # 1004

Joseph E. Montoya Bldg.

City: Santa Fe                           State: NM    Zip: 87501

Country:

Attention:

Phone:

Fax:

Use Client's Address? Yes

| Bill Delivery | Printed Invoice? Yes |
|---|---|

Email Bill Delivery? No

EDI Billing? No

| Date Matter Opened | 02/09/2017 |
|---|---|

| Location | 01 |
|---|---|

| Department | 01 |
|---|---|

# *Matter Intake Form*

**Client Code:** 007230      **Client Name:** STATE OF NEW MEXICO

| | |
|---|---|
| Type Of Matter | Litigation – Other |
| Fee Arrangement | Hourly |
| Quoted Price | |
| Charge Interest? | |
| Billing Cycle | Monthly |
| Rate Code (Z,A,B,B) or NEW | C |
| Billing Notes (Special Rates) | |

| | |
|---|---|
| Intake Notes for Accting | |



| | |
|---|---|
| Originating Attorney | WJM |
| Managing Attorney | WJM |
| Project Attorney | WJM |
| Billing Attorney | WJM |
| Claim No. | RMD #1501022-000 |
| Venue | NM State Court |
| Budget Hours | |
| Budget Fees | |
| Budget Expenses | |
| Validate Costs | Yes |
| Validate Threshold | 20 |



| Accounting | | Completed? No |
|---|---|---|
| | | Assigned to: ZZZZZZ |
| Charge Sales Tax | |
| Tax Code | |
| Conflict Check Complete? | Completed? No |
| Invoice Style | M2 – Without Concatenation (No Rate) |
| Fees Selected/Deferred | Selected |
| Expenses Selected/Deferred | Selected |

2/9/2017